.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAYA SULLIVAN,

      Plaintiff,                        No. CIV S-09-1280 EFB

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                  <u>ORDER</u>
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court grants plaintiff's motion for summary judgment or remand, denies the Commissioner's cross-motion for summary judgment, and remands the case for further proceedings.

I. <u>Factual and Procedural Background</u>

      Plaintiff filed an application for benefits on November 9, 2005. Administrative Record ("AR") 15. Her application was denied initially and on reconsideration. *Id.* A hearing was held on February 25, 2008 before Administrative Law Judge ("ALJ") David R. Mazzi. *Id.* Plaintiff, who was represented by non-attorney Debbie Leigh-Mango, testified as did Stephen P. Davis, a

1

vocational expert. *Id.* at 12. In a decision dated September 30, 2008, the ALJ determined plaintiff was not disabled.[1] *Id.*

The ALJ made the following specific findings:

> 1. The claimant filed applications on December 6, 2005, with a protective filing date of November 9, 2005, for disability benefits under Title II and Title XVI of the Act.
>
> 2. The claimant met the insured status requirements of the Social Security Act as of her alleged onset date of disability of July 12, 2004 and remains insured for Title II disability benefit purposes through December 31, 2009.
>
> 3. There is no indication that the claimant has engaged in substantial gainful activity since July 12, 2009, the alleged onset date of disability (20 C.F.R. 404.1520(b), 404.1571, *et seq.*, 416.920(b) and 416.971, *et seq.*).
>
> 4. The medical evidence establishes that the claimant has the following severe impairments: chronic fatigue syndrome, fibromyalgia, asthma and depression (20 C.F.R. 404.520(c) and 416.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:
   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
   Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
   Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
   Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

. . .

    5. The medically established disorders are not attended by clinical and laboratory findings that meet or equal any listed impairment of 20 C.F.R., Part 404, Subpart P, Appendix 1 for any twelve-month period (20 C.F.R. 404.1520d) and 20 C.F.R. 416.920(d)).

    6. The claimant retains the residual functional capacity to perform unskilled light work, as defined at 20 C.F.R. 404.1567(b), 416.967(b).

. . .

    7. The claimant is unable to perform her past relevant work (20 C.F.R. 404.1565 and 416.965).

. . .

    8. The claimant is 33 years of age or a younger individual (20 C.F.R. 404.1563 and 416.963).

    9. The claimant has more than a high school education. She is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

    10. In light of her age, the claimant is not expected to encounter difficulty adjusting to other work (20 C.F.R. 404.1563 and 20 C.F.R. 416.963). Therefore, there is no issue of transferability of job skills.

    11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966).

. . .

    12. The claimant is not disabled as defined in the Social Security Act beginning at any time on or before the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

    13. There is no basis to reopen the April 23, 2003 initial determination that remains administratively final and binding.

*Id.* at 17-21.

    Plaintiff requested that the Appeals Council review the ALJ's decision. However, on March 3, 2009, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 5-7.

3

Plaintiff contends that: 1) the ALJ's credibility finding was not sufficiently specific, clear and convincing; 2) the ALJ erred in mechanically applying the grids when plaintiff suffered from both exertional and nonexertional impairments; and 3) the ALJ failed to consider Dr. Espino's opinion that plaintiff's chronic fatigue syndrome may result in difficulty sustaining work activities. Dckt. No. 21 at 8-15.

II. Standard of Review

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. Analysis

Plaintiff testified at the hearing that her chronic fatigue syndrome is the major reason why she cannot work. AR 458. She stated that she is not able to focus, and that there are many days that she cannot get out of bed. *Id.* She only leaves her house once a week to shop for food,

4

1  and it takes her 2-3 days to recover from the shopping trip. *Id.* Plaintiff also testified that her
2  pain medication makes her sick, and that she averages one migraine headache per week. *Id.* at
3  459. She testified that she stopped driving because she could not focus. *Id.* at 460. She further
4  testified that her mind goes completely blank, she cannot think, and that she is so sick and tired
5  that it very often takes a "conscious effort" to sit up. *Id.* at 461. She stated that "physical hygiene
6  has become an issue" because even taking a shower "wipes her out." *Id.* She testified that she
7  could only sit up without support for half an hour, and then she would need to lie down. *Id.* at
8  465. When asked how her problems with mental clarity would affect her ability to work, she
9  responded that "by the time I . . . actually get to where I need to go, most of the time, [it's] game
10 over." *Id.*

   As noted above, the ALJ found that plaintiff suffered from the severe impairments of chronic fatigue syndrome, fibromyalgia, asthma and depression, but retained the residual functional capacity to perform unskilled light work. He wrote:

> In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence . . . .
>
> The medical evidence documents a history of chronic fatigue syndrome based on the claimant's complaints of persistent fatigue. Laboratory test results of December 2001 disclosed an abnormal Epstein-Barre result . . . . The claimant was evaluated in November of 2004 by Steven Oliver, M.D., who diagnosed chronic fatigue with insomnia for which Amitriptyline and Ambien were prescribed . . . . In a February 2006 consultative examination, however, Ben Busfield, M.D., noted full strength in all muscle groups and excellent range of motion; the claimant, reported tenderness of the knees, trochanteric bursa, low back and neck and pain in the wrists, elbows and arms . . . . The claimant pursued medical care through Aikkachai Jirasritumrong, M.D., of the Solano County Health Department. Treatment from April through May of 2006, which included the prescription of medications including Amitriptyline for chronic fatigue syndrome.
>
> . . .
>
> The claimant also complains of headaches. A July 2002 MRI report of the brain was unremarkable . . . .

Dr. Busfield opined in February of 2006 that, based on his examination, there were no physical limitations[].[2] The state agency consulting physician provided a functional capacity assessment for light work . . . .  Although Dr. Busfield found no physical limitations, I rely on the state agency consulting physician and the record as a whole, including the claimant's subjective complaints in light of the nature of her diagnosed fibromyalgia, to find she is limited to light work.  Although the comprehensive evaluation conducted by Dr. Busfield indicated no significantly abnormal medical findings to support a reduced physical capability, other records show trigger points and tenderness that support a diagnosis of fibromyalgia, considered in conjunction with the claimant's subjective complaints, and a limitation to light work.  There are no abnormal neurological findings or loss of strength on exam to prevent the performance of light work.  Also, the claimant has received only conservative medical care.

Medical care was also provided for complaints of depression.  In February of 2003, the claimant was referred to the Solano County Mental Health after she reportedly overdosed on medications in a suicide attempt.  Mental status examination, however, was unremarkable, and she was diagnosed with a depressive disorder[].  In March of 2003, Philip M. Cushman, Ph.D., reported that consultative examination disclosed early signs of a dysthymic disorder and depressive disorder manifested by mild anxiety and some difficulty concentrating . . . .  Dr. Cushman opined that the claimant most likely could perform simple, repetitive tasks in a vocational setting and of relating appropriately to others.  Wendy M. McCray, Ph.D., conducted a consultative evaluation and reported in February 2006 that mental status examination was unremarkable with neurovegetative signs of decreased motivation, diminished energy and disrupted sleep.  Dr. McCray diagnosed a depressive disorder.  In Dr. McCray's opinion, claimant was able to perform simple, repetitive tasks as well as tasks requiring higher level cognitive function . . . on May 23, 2007. . . claimant was diagnosed with an adjustment disorder with anxiety and depression . . . .  There is evidence of a mood disorder with neurovegetative signs, as well as chronic fatigue with complaints of insomnia, which support the assessed limitation to simple, repetitive tasks.

Based on the weight of the evidence in the record, I find that the claimant is limited to light work involving simple, repetitive tasks equating to unskilled work.  As noted above, I have considered the claimant's subjective complaints in determining her residual functional capacity.  In an February 2006 disability report, the claimant indicated that she spends her days reading, corresponding

---

[2] Dr. Busfield wrote that plaintiff's "chief complaints" were fibromyalgia and chronic fatigue syndrome, but that there was "no objective evidence to restrict her standing, walking, sitting, or the amount of weight she can lift or carry based on my examination." AR 353, 57.

>through e-mails, watching television and going to the library. She reported that she prepared simple meals, vacuumed, and shopped.... Although other reports indicate more restricted activities, the record as a whole supports an ability to perform simple, repetitive tasks within the physical residual functional capacity found herein. Therapy was recommended for the emotional symptoms, but the evidence shows that the claimant did not pursue such care. Medications were prescribed, but the level of conservative care provided is not consistent with the extreme limitations alleged by the claimant or with an inability to perform unskilled, light work. As discussed above, the medical opinions are also inconsistent with the degree of symptoms alleged and even less restrictive than the residual functional capacity found herein. When considering the evidence as a whole, I find that the alleged intensity, persistence and functionally limiting effects of the subjective complaints are credible only to the extent that they are consistent with the findings herein.

*Id.* at 19-20.

Plaintiff testified that her chronic fatigue syndrome is the major reason why she cannot work. While the ALJ found that she did indeed have the severe impairments of chronic fatigue syndrome and fibromyalgia, his opinion failed to address the effect of these impairments on her ability to work. The ALJ wrote that plaintiff had "full strength in all muscle groups and excellent range of motion," that "the comprehensive evaluation conducted by Dr. Busfield indicated no significantly abnormal medical findings to support a reduced physical capability" and that "[t]here are no abnormal neurological findings or loss of strength on exam to prevent the performance of light work." *Id.* His opinion implies that, if plaintiff's subjective complaints were valid, they would be supported by abnormal examination findings.

The ALJ appears to misunderstand the nature of plaintiff's chief impairments. Chronic fatigue syndrome and fibromyalgia would not be expected to reduce muscle strength or produce abnormal neurological findings; indeed, the diseases are not diagnosed on the basis of objective criteria.[3] *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (holding that ALJ erred in

---

[3] According to the Merck Manual,

>Chronic fatigue syndrome is defined as long-standing, severe, disabling fatigue without demonstrable muscle weakness.

7

1  effectively requiring 'objective' evidence for a disease that eludes such measurement); *Cook v.*
2  *Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 21 (1st Cir. 2003) (requiring objective
3  documentation of chronic fatigue syndrome is unreasonable); *Mitchell v. Eastman Kodak Co.*,
4  113 F.3d 433 (3rd Cir.1997) (same).  As plaintiff's chief complaint, chronic fatigue syndrome,
5  cannot be expected to be supported by objective medical findings, the ALJ's credibility
6  determination is critical to determining whether plaintiff is entitled to benefits.
7    An ALJ determines whether a disability applicant is credible, and the court defers to the
8  ALJ's discretion if the ALJ used the proper process and provided proper reasons.  *See*, *e.g.*,
9  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

---

> Underlying disorders that could explain the fatigue are absent.
> Depression, anxiety, and other psychologic diagnoses are typically
> absent . . . .
> Etiology remains controversial, and the precise cause remains
> unknown.  Psychologic factors may be the cause in an unknown
> percentage of cases; however, CFS seems to be distinct from
> typical depression, anxiety, or other psychologic disorders.  A
> chronic viral infection has been proposed as a cause . . . .
> Data indicate that relatives of patients with CFS have an increased
> risk of developing the syndrome, suggesting a familial or genetic
> component.

Merck Research Laboratories, *The Merck Manual of Diagnosis and Therapy*, 2740 (18th ed. 2006).

  Diagnostic criteria include at least four of the following for more than six months: severely impaired short-term memory (self-reported), sore throat, low-grade fever, tender lymph nodes, muscle pain, abdominal pain, arthalgia, headaches, unrefreshing sleep, postexertional malaise lasting more than 24 hours, and cognitive difficulties.  *Id.* at 2741.
Treatment of the syndrome includes "antidepressants . . . although their value is undetermined . . . psychologic intervention . . . may help some patients . . . Formal, structured physical rehabilitation programs may help."  *Id.*

  The manual also explains:

> Fibromyalgia is a common nonarticular disorder of unknown cause
> characterized by generalized aching (sometimes severe),
> widespread tenderness of muscles, areas around tendon insertions,
> and adjacent soft tissues, as well as muscle stiffness, fatigue and
> poor sleep. Diagnosis is clinical. Treatment includes exercise, local
> heat, stress management, drugs to improve sleep, and analgesics.

*Id.* at 321.

8

explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief"). In evaluating whether subjective complaints are credible, the ALJ may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).

Here, the ALJ failed to provide clear and convincing reasons for his determination that plaintiff was not credible. The following reasons for rejecting plaintiff's testimony may be gleaned from the ALJ's opinion. First, as detailed above, he wrote that plaintiff's examinations revealed no abnormal neurological findings and no loss of muscle strength or range of motion. This does not constitute a convincing reason for rejecting plaintiff's testimony, as fibromyalgia and chronic fatigue syndrome would not be expected to produce those symptoms.

Next, the ALJ wrote that, while plaintiff had been prescribed medications, she had "received only conservative medical care" and that the level of care plaintiff received was inconsistent with the extreme limitations that plaintiff testified to. AR 19. He stated that although therapy was recommended for plaintiff's "emotional symptoms," she did not pursue such care. *Id.* While failure to seek treatment or to follow a prescribed course of treatment may constitute a proper reason to reject subjective complaints, in this case, given the nature of plaintiff's alleged impairments, it does not. The ALJ does not explain what more aggressive treatments plaintiff should have sought out for her chronic fatigue syndrome and fibromyalgia; it is not as though either condition can be treated with surgery. And the ALJ's reference to plaintiff's failure to attend therapy for her "emotional symptoms" dismissively implies that

plaintiff's chronic fatigue syndrome and fibromyalgia may be classified as emotional disorders.[4]

Finally, the ALJ wrote that plaintiff reported that she "spen[t] her days reading, corresponding through e-mails, watching television and going to the library . . . she prepared simple meals, vacuumed, and shopped." The ALJ found that this supported plaintiff's ability to perform simple, repetitive tasks at the light exertional level. But this summary of the report is incomplete and misleading. The report also stated that plaintiff was unable to work, write, draw, sleep undisturbed, or go to the movies. Plaintiff wrote that she had problems washing her hair and that she was so fatigued that her personal care took a very long time. Examples of the "simple meals" plaintiff prepared was "sandwich, microwave meals, get yogurt out of fridge," and she wrote, "I don't really cook any more." She wrote that she was able to vacuum for five minutes; that she could shop for 5-10 minutes, but not in big stores; and that she went outside to check the mail once a day if she was feeling good, and otherwise only went outside once or twice a week. She wrote that she went to the library, but needed someone to accompany her, and that she could only walk 1/4 to 1/2 of a block before stopping to rest. AR 136-43. Thus, when taken in the context of the entire report, plaintiff's self-reported ability to engage in some limited activities does not constitute a convincing reason for finding that her testimony is not credible. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It does not suffice to determine that the claimant is capable of some of the activities of normal life; the ALJ must also demonstrate that 'the ability to perform those daily activities translated into the ability to perform appropriate work.'"). Thus, the ALJ erred in failing to provide clear and convincing reasons for rejecting plaintiff's testimony regarding the extent of her limitations.

Finally, the ALJ erred in relying exclusively on the grids in making his disability determination when plaintiff had extensive nonexertional limitations. The Medical-Vocational Guidelines ("the grids") are tables that present various combinations of factors the ALJ must

---

[4] Plaintiff argues that the ALJ did not actually determine at the hearing whether plaintiff actually went to counseling, and if she did not, whether it was because she could not pay for it.

10

consider in determining whether other work is available. *See generally Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 577-78 (9th Cir. 1988). For each combination of factors, the grids direct a finding of either "disabled" or "not disabled." An ALJ may apply the grids instead of consulting a vocational expert "only when the grids accurately and completely describe the claimant's abilities and limitations." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985); *see also Heckler v. Campbell*, 461 U.S. 458, 462 n.5 (1983). If a claimant has nonexertional limitations–that is, limitations on his or her ability to work that do not directly affect his or her strength--the ALJ may only rely on the grids if the nonexertional limitations are not so significant as to impact the claimant's exertional capabilities. *See Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993).

Chronic fatigue syndrome and fibromyalgia are conditions with nonexertional limitations. *See Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). In this case, although there was a vocational expert at plaintiff's hearing, the ALJ only asked him whether an individual limited to light work would be able to perform plaintiff's past employment. AR 464. Apparently because the ALJ had already decided that the grids dictated that plaintiff could perform light work, the ALJ did not ask the vocational expert any questions regarding plaintiff's ability to perform other jobs.[5] The ALJ's opinion states that "the Medical-Vocational Guidelines . . . direct

---

[5] The exchange between the ALJ and the VE follows:

>  Q. Now, can you please characterize for us, in vocational terms the, the prior work?
>  A. Well, she was a nanny...She classified at medium, Your Honor, and performed at medium, as well as sedentary.
>  Q. Okay.
>  A. On different occasions. In the job as a customer order clerk...classified as sedentary and performed at sedentary. Then, she was an office manager...classified light, performed as sedentary, Your Honor.
>  Q. Okay.
>  A. That's it.
>  Q. Let me ask you, if you had an individual limited to SVP 2 or, or less. Would that preclude the performance of all of the prior jobs, in your opinion?

11

a finding of 'not disabled.'" *Id.* at 21. The ALJ failed to take into account plaintiff's nonexertional limitations in reaching this result.

As the ALJ failed to provide clear and convincing reasons for finding that plaintiff was not credible, and failed to take into account plaintiff's nonexertional requirements in applying the grids, his decision is not supported by substantial evidence. The action must be remanded for further consideration, and so the court does not address plaintiff's other arguments.

IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment and/or remand is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. This case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings and findings consistent with this order; and

4. The Clerk is directed to enter judgment for plaintiff.

DATED: September 22, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

A.  Yes, Your Honor.
Q.  Okay, thank you.
A.  Ms. Lee Mingo, would you like to ask any questions of Mr. Davis or, of Ms. Sullivan?

AR 463-64.